IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MEDIA D. PANETO,**                      :
                                          :      **Civil No. 1:18-cv-1794**
           **Plaintiff,**                 :
                                          :
    **v.**                                :
                                          :
**CWORK SOLUTIONS, LP, d/b/a**            :
**ASSURANT SOLUTIONS, a wholly**          :
**owned subsidiary of SIGNAL**            :
**HOLDINGS, LLC,**                        :
                                          :
           **Defendant.**                 :      **Judge Sylvia H. Rambo**


**M E M O R A N D U M**

Before the court is Defendant CWork Solutions, L.P.'s ("CWork") motion for summary judgment. (Doc. 20.)  For the reasons set forth below, the court will grant the motion part and deny it in part.

## I.      BACKGROUND

This action arises from Plaintiff Media Paneto's claims that her prior employer CWork discriminated against her on the basis of her race, disability, and sex, and retaliated against her for complaining about discrimination. CWork provides wireless phone repair and logistics services. (Doc. 21, ¶ 1.) Ms. Paneto began her employment with CWork in November 2013 as a Material Processor, and in 2015 she was promoted to Material Processor II, a title she held until her termination in February 2017. (*Id.* ¶¶ 1, 2, 12, 48.)

1

Ms. Paneto testified that during her employment with CWork, she was subjected to derogatory name-calling, physical assault and humiliation, and unfair treatment at the hands of her colleagues and supervisors. Ms. Paneto is of "African American and Hispanic descent." (Doc. 35-1, ¶ 2.) Ms. Paneto's direct supervisor, Michelle Bame, who is Caucasian, treated her particularly poorly. (Doc. 35-1, ¶ 5.) Ms. Bame called female employees "bitches," and black employees "color[ed]" and "monkeys," and she advanced racist stereotypes about black people liking chicken and Hispanic people liking rice and beans. (Doc. 35-2, pp. 177-80, 363.) On one occasion in 2016, Ms. Bame slapped Ms. Paneto's face in front of her co-workers so hard that it left a red mark, supposedly because Ms. Paneto was wearing both of her earbuds on CWork's production floor. (*Id.* pp. 268-373, 379-381.)

Ms. Paneto testified that she responded to this treatment in various ways, without much success. She tried objecting directly to Ms. Bame's use of derogatory language, but Ms. Bame told her to "get used to it." (*Id.* p. 180.) She also tried reporting Ms. Bame's physical assault to multiple human resources personnel and multiple of Ms. Bame's supervisors, but there is no indication that anyone ever investigated or addressed the complaint. (*Id.* pp. 303, 372-73.) Ms. Paneto even requested a transfer to another department due to the assault, but the request was never granted. (*Id.*)

According to Ms. Paneto, other supervisors and employees used racist language towards her and other black employees. She testified that one of her Caucasian co-workers, Amanda Presler, called her a "nigger" in front of at least three other colleagues, and that another Caucasian supervisor, Gary Ziler, called her a "monkey" in front of her entire department. (Doc. 35-1, ¶¶ 3, 4; Doc. 35-2, pp. 15, 16, 18-20.) Ms. Paneto reported Ms. Presler's slur to Ms. Bame, who promised to "handle it" but never took any action. (Doc. 35-2, pp. 14-15.) Ms. Paneto also reported Mr. Ziler's remark to Ms. Bame and another supervisor, but there is no indication that either ever addressed the complaint. (*Id.* pp. 19-20.)

Ms. Paneto further testified that Mr. Ziler called her a "black bitch" (*id.* p. 15), that he belittled employees of color, and that he and other supervisors enforced various company policies—including those regarding dress code, family visitors, and the timing of breaks—more strictly against employees of color as compared to Caucasian employees. (*Id.* pp. 12-13, 335-351.) Ms. Paneto also testified that Mr. Ziler disparaged female employees by saying things such as "[a] man's job is to go out and make the money, and the woman's job is to stay at home and take care of the kids." (*Id.* pp. 359-60, 362.)

Additionally, Ms. Paneto testified that she was unfairly punished on numerous occasions. For example, in September 2, 2016, Ms. Paneto received a verbal warning for purportedly exercising unprofessional behavior on August 26, 2016. (Doc. 34,

¶ 22.) Written statements by some of her colleagues describe Ms. Paneto "shouting, singing, dancing, falling to the floor and lying on the ground," insisting she would take "other employees down" if she called into human resources, and calling a co-worker an "old bitch." (Doc. 21, ¶ 17.) Ms. Paneto contests the truth of the allegations. The employee statements regarding Ms. Paneto's behavior were initially received by Mr. Ziler, who was out of work on the day in question. On August 29, 2016, after Mr. Ziler returned to work, Ms. Paneto testified that he gathered several employees in a single room to air their complaints about her. (Doc. 34, ¶ 13.) Lydia Brown, one of CWork's human resources representatives, testified that she personally harbored concerns about Mr. Ziler's professionalism, and that she was aware that Mr. Ziler and Ms. Paneto "did not get along." (*Id.*) Despite these concerns, Ms. Brown was confident in Mr. Ziler's investigation because the people that gave statements were "good employees" who she had "no reason to doubt." (Doc. 35-4, pp. 30-31.)

On September 30, 2016, Ms. Bame and Brown met with Ms. Paneto and issued her a written discipline for the August 26, 2016 incidents. (Doc. 21, ¶ 22.) Ms. Brown and Ms. Bame testified that Ms. Paneto yelled and interrupted them during the meeting, and that she also left several times without explanation. (*Id.* ¶ 23.) Ms. Paneto testified that she did not yell or interrupt anyone during the meeting, and that when she excused herself, she explained to Ms. Bame and Ms. Brown that

4

it was because she was experiencing hemi-facial spasms. (Doc. 34, ¶ 23.) Four days earlier, Ms. Paneto had been approved for intermittent leave under the Family and Medical Leave Act ("FMLA") for the condition, which manifests as facial paralysis and twitching. (Doc. 21, ¶¶ 21-22; Doc. 35-2, p. 77.) In response, Ms. Brown and Ms. Bame told Ms. Paneto that she could be terminated if she appeared to be misusing FMLA leave. (Doc. 34, ¶ 25.) Ms. Paneto remained at work for the rest of her shift. (Doc. 21, ¶ 25.) On October 13, 2016, Ms. Bame issued Ms. Paneto a "record of conversation" for her "unprofessional behavior" in the meeting. (*Id.* ¶ 26.)

For her 2016 annual review, Ms. Paneto received substantially worse evaluations than in the previous two years. (*Id.* ¶ 31.) Her overall rating on a four-point scale was 2.11, which was significantly lower than her 3.05 rating in 2015 and her 3.27 rating in 2014. (Doc. 35-2, pp. 58, 64, 69.) Ms. Paneto testified that, despite her substantially lower score in 2016, her work performance and conduct did not change from years past. Ms. Bame remarked in the 2016 evaluation that Ms. Paneto had difficulties with emotional control and following policies and procedures she disagreed with, but she also noted those issues in her prior evaluations. (Doc. 35, ¶ 31.) In addition, Ms. Paneto's 2016 evaluation gave her poor marks for attendance despite the fact that she was never disciplined for any attendance issues during the year, while her 2015 evaluation appeared to overlook multiple warnings that she received for attendance issues. (*Id.*)

In December 2016, Ms. Paneto's male colleague Stephan Watson showed her his paycheck, which revealed that he made 92 cents more per hour, despite the fact that he held Ms. Paneto's same position and had been with the company for two fewer years. (Doc. 21, ¶ 51; Doc. 34, ¶¶ 52, 54-55.) However, according to CWork's payroll records, Ms. Paneto's hourly pay exceeded Mr. Watson's by 38 cents in April 2016, and by 17 cents in January 2017. (Doc. 21, ¶¶ 54, 55.)

On February 2, 2017, CWork terminated Ms. Paneto for engaging in bullying behavior and making inappropriate comments regarding Ms. Presler. (*Id.* ¶¶ 47-48; Doc. 38; Doc. 34, ¶¶ 40-41.) Ms. Presler and another employee, Nina Rodriguez, alleged that they heard Ms. Paneto tell a co-worker during lunch, "don't turn around now there's a fat ass behind you," referring to Ms. Presler. Ms. Rodriguez further complained Ms. Paneto was giving her "dirty stares and whispering about her," and Ms. Presler also complained that Ms. Paneto yelled at her in the parking lot, "look at this nasty ass hoe, disobeying laws and shit." [1] (Doc. 21, ¶ 37; Doc. 34, ¶¶ 43–44.) Ms. Paneto contested the allegations and maintained that she was not even at work the day the "fat ass" comments were made. (Doc. 35-6, p. 13.) Moreover, her co-worker Shakira Hansley testified that she was the one that made the remarks, and

---

[1] While Ms. Presler also alleged that Ms. Paneto used unspecified "racial slurs" (Doc. 21-1, p. 81), she testified in her deposition that she never actually heard Ms. Paneto use any racial slurs, and that she made the allegation because she heard from a colleague that Ms. Paneto called her a "white supremacist." (Doc. 35-10.) In any event, the allegation was not cited as one of the reasons for Ms. Paneto's termination. (*See* Doc. 35-6, pp. 68-69.)

that she informed CWork's human resources department of that fact, but was never disciplined. (Doc. 38-5, pp. 35-36.) Another colleague, Falisha West, also testified that Ms. Hansley made the comments. (Doc. 35-9, pp. 50-52.) CWork's Director of Human Resources does not recall making an effort to verify whether Ms. Paneto was at work on the day the remarks were made, and it does not appear that he ever interviewed Ms. West or Ms. Hansley prior to terminating Ms. Paneto. (Doc. 35-6, p. 69.)

In September 2018, Ms. Paneto initiated this action against CWork. Count I of the complaint asserts equal pay claims under the Equal Pay Act, Title VII, and the Pennsylvania Human Relations Act. Count II asserts disparate treatment gender and race discrimination claims, based on hostile work environment, under Title VII and the PHRA. Counts III and IV assert claims for FMLA interference and FMLA retaliation respectively. Count V asserts claims for gender discrimination, race discrimination, and retaliation under Title VII and the PHRA, based on Ms. Paneto's termination, disciplines, and 2016 evaluation. Count V also asserts claims for disability discrimination under the Americans with Disabilities Act and the ADA Amendments Act of 2008. Ms. Paneto has voluntarily withdrawn Count III and her claims for disability discrimination under Count V.

On March 13, 2019, CWork discovered that Ms. Paneto misrepresented her level of education on her resume that she submitted to get hired by the company.

Specifically, Ms. Paneto falsely stated on her resume that she possessed a high school diploma from Williamsport Area High School, when in fact she never graduated from high school. (Doc. 21, ¶¶ 4, 9.) Ms. Paneto does not contest that she made the misrepresentations. (*See id*. ¶ 6.)

In October 2019, CWork moved for summary judgment on each of Ms. Paneto's claims and its defense of after-acquired evidence. (Doc. 20.) The motion has been fully briefed and is ripe for review.

## II.   **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the case's outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *Id*. When evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party must initially demonstrate that there is no dispute of material fact. See *Celotex*, 477 U.S. at 325. Once it has done so, "the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Rule 56 requires the nonmoving party "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted).[2] The nonmovant must present more than a mere scintilla of evidence and must not only identify "some metaphysical doubt as to the material facts"—the evidence must be such that a jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."

[2] CWork requests that the court disregard Ms. Paneto's responses to its Statement of Facts to the extent they are non-responsive or argumentative. A party opposing a summary judgment motion must comply with Local Rule 56.1, by submitting a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [of the movant], as to which it is contended that there exists a genuine issue to be tried. L.R. 56.1. If the non-movant fails to comply with this rule, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *Id.* Review of Ms. Paneto's responses show that they substantially comply with Local Rule 56.1 by answering the statement of facts in corresponding numbered paragraphs with citations to the record. Moreover, the "drastic remedy" of striking is normally reserved for circumstances where surplusage will create prejudice, and CWork makes no such argument. *See Reid v. Sleepy's, LLC*, No. 3:14-CV-2006, 2016 WL 3345521, *7 (M.D. Pa. June 16, 2016). Regardless, the court considers Ms. Paneto's responses only to the extent they are supported by the record.

*Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995);

*see also Bristol v. Settle,* 457 F. App'x 202, 204 (3d Cir. 2012).

## III.   <u>DISCUSSION</u>

### A.   <u>CWork is entitled to summary judgment on Ms. Paneto's gender-based equal pay claims.</u>

CWork moves for summary judgment on Ms. Paneto's gender-based equal pay claims under the Equal Pay Act, Title VII, and the PHRA. The Equal Pay Act forbids employers from "paying wages to employees. . . .at a rate less than the rate at which he pays wages to employees of the opposite sex. . . .for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C.A. § 206(d)(1). To recover on an equal pay claim under the statutes, the plaintiff must establish a prima facie case that she (1) was paid less than male employees, (2) within an establishment, (3) for work "requir[ing] equal skill, effort, and responsibility, and which [is] performed under similar working conditions." *Finefrock v. Five Guys Operations, LLC*, No. 1:16-CV-1221, 2017 WL 1196509, at *2 (M.D. Pa. Mar. 31, 2017); *see also Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).[3] Generally,

---

[3] The Equal Pay Act does not employ the *McDonnell Douglas* burden-shifting framework that is used for Title VII and the PHRA equal pay claims, which are analyzed coextensively. *See Schengrund v. Pennsylvania State Univ.*, 705 F. Supp. 2d 425, 438 (M.D. Pa. 2009). However, "the standard for a prima facie case under the Equal Pay Act also serves as the standard for a prima facie case in an unequal pay Title VII action." *Martinelli v. Penn Millers Ins. Co.*, No. 3-CV-02-

the plaintiff must identify a specific comparator. *See Finefrock*, 2017 WL 1196509, at \*3. If the plaintiff establishes a prima facie claim, the burden of persuasion shifts to the defendant to prove an affirmative defense. *Stanziale,* 200 F.3d at 107.

Ms. Paneto has failed to establish a prima facie equal pay claim. Though Ms. Paneto identifies Mr. Watson as a comparator, she has not come forward any admissible evidence to show that she was actually paid less than him. In fact, CWork's payroll records reflect that Ms. Paneto's pay rate *exceeded* Mr. Watson's in April 2016 and January 2017. Ms. Paneto attempts to create a fact dispute by pointing to her testimony that in December 2016, she saw one of Mr. Watson's paystubs, which reflected that he made 92 cents more per hour. As a matter of substantive law, however, the court is not persuaded that this single-month pay disparity raises an issue of fact precluding summary judgment, especially given the evidence that Mr. Paneto's pay rate exceeded Mr. Watson's during multiple other months. Even if it does though, as CWork correctly argues, the best evidence rule as enumerated in Federal Rule of Evidence 1002 requires Ms. Paneto to produce the original paystub if she were to testify at trial regarding its actual content. *United States v. Miller*, 248 F. App'x 426, 429 (3d Cir. 2007) ("[A] party [must] produce original documents if a witness testifies to the actual content of a writing.");

---

2292, 2005 WL 2100695, \*14 (M.D. Pa. Aug. 29, 2005), *aff'd*, 269 F. App'x 226 (3d Cir. 2008) (citation omitted).

*Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) ("In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce *admissible* evidence regarding a disputed issue of material fact at trial.") (emphasis added). Ms. Paneto has had ample opportunity to produce admissible evidence in support of her claim that she was paid less than her male colleagues and she has failed to do so. Accordingly, Ms. Paneto has not established a prima facie equal pay claim and CWork is entitled to summary judgment on Count I.

## B. **CWork is entitled to summary judgment on Ms. Paneto's claims that she was terminated based on sex discrimination, but not her claims that she was terminated based on race discrimination.**

CWork also moves for summary judgment on Ms. Paneto's race and sex employment discrimination claims under Title VII and the PHRA, which relate to Ms. Paneto's termination.[4] The Third Circuit has held that "[c]laims under the PHRA are interpreted coextensively with Title VII claims" and can thus be analyzed simultaneously. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013). Where, as here, a plaintiff relies on indirect evidence to establish their claim for discrimination, the *McDonnell-Douglas* burden-shifting framework applies. *See*

---

[4] The complaint also appears to plead a discrimination claim based specifically on certain disciplinary actions taken against Ms. Paneto. However, CWork's moving brief demonstrates that the disciplinary actions were not true adverse employment actions as necessary to establish a prima facie discrimination claim, and Ms. Paneto's opposition brief makes no argument that she has a standalone discrimination based on the that discipline. As such, Ms. Paneto's Title VII and PHRA discrimination claims based on specifically the discipline she received will be dismissed.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1974); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016). The framework has three steps. First, the plaintiff must establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Id.* (citing *Jones,* 198 F.3d at 410). A plaintiff can establish such an inference by demonstrating that "similarly situated non-members of the protected class were treated more favorably." *Langley v. Merck & Co.*, 186 F. App'x 258, 259 (3d Cir. 2006). Second, if the plaintiff successfully makes a *prima facie* case, "the burden then shifts to the employer to articulate a legitimate … nondiscriminatory reason for its actions." *Tourtellotte*, 636 F. App'x at 842. Third, if the employer articulates a legitimate reason for its actions, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the asserted nondiscriminatory explanation is "merely a pretext for the discrimination." *Id*. Although the burden of production shifts, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

Here, CWork disputes only the fourth element of Ms. Paneto's prima facie claim and contends that she has not shown that her termination occurred under

circumstances giving rise to an inference of discrimination. With respect to gender discrimination, the court agrees. Ms. Paneto's opposition brief makes no substantive argument that she was terminated based on gender discrimination, and the court has searched the record and found no direct or circumstantial evidence of a connection. As such, CWork is entitled to summary judgment on Ms. Paneto's Title VII and PHRA sex discrimination claims based on her termination.

Ms. Paneto has, however, demonstrated that her termination occurred under circumstances giving rise to an inference of race discrimination. A plaintiff may establish an inference of discrimination by showing that "similarly situated non-members of the protected class were treated more favorably." *Langley,* 186 F. App'x at 259. To this end, CWork argues that Ms. Paneto has not adduced evidence that CWork failed to terminate other employees that used offensive language as Ms. Paneto purportedly did. The problem with this argument is that Ms. Paneto has, in fact, shown evidence that some of her colleagues and supervisors subjected her to vile racial slurs, that one of her supervisors slapped Ms. Paneto in the face in front of her co-workers, and, crucially, that all those actions appeared to have gone unpunished.

While the "fat ass" and "nasty ass hoe" comments attributed to Ms. Paneto—perhaps incorrectly—and cited as one of the reasons for her termination are undoubtedly offensive, they pale in comparison to the discriminatory language and

humiliating treatment she experienced at the hands of some of her co-workers. Two wrongs hardly make a right, but this evidence of CWork's acceptance of discriminatory language and abusive behavior, as well as its uneven enforcement of employment rules, is sufficient to show for purposes of summary judgment that Ms. Paneto's termination occurred under circumstances giving rise to an inference of discrimination.

Given that Ms. Paneto has established a prima facie race discrimination claim, the burden shifts to CWork to articulate a legitimate, non-discriminatory reason for her termination. There is no dispute that CWork has satisfied by this burden by asserting that it terminated Ms. Paneto for abusive language and bullying behavior, so the burden shifts back to Ms. Paneto to show pretext. In order to establish pretext, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citation omitted). Demonstrating that the employer's decision was merely "wrong or mistaken" is insufficient, and the plaintiff must instead identify "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's asserted reasons that a reasonable factfinder could find them "unworthy of credence." *See Tomasso*, 445 F.3d at 708

(quoting *Fuentes*, 32 F.3d at 765); *see also Kautz v. Met–Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005).

Here, Ms. Paneto has shown sufficient evidence from which a reasonable jury could disbelieve that CWork terminated her for inappropriate comments and bullying behavior. There is evidence in the record that Ms. Paneto was not at work when at least two of the comments were made—"nasty ass hoe" and "fat ass"—and that CWork made no effort to verify that fact. There is also evidence that Ms. Paneto's colleague was the one who actually made those remarks, and that the colleague informed CWork's human resources department of that fact, but was never disciplined.

Further, there is evidence in the record that CWork failed to discipline—or even investigate—multiple instances of Ms. Paneto's co-workers and supervisors engaging in the very same behavior for which it purported to terminate Ms. Paneto. Some of the complaints that CWork appears to have completely ignored involved substantially more serious allegations of bullying and name-calling as compared to what was alleged of Ms. Paneto, including her colleagues and supervisors using abhorrent racial slurs and her direct supervisor assaulting her in front of others. Finally, the aforementioned evidence is colored by CWork's history of conducting investigations in a one-sided and highly questionable manner, as well as the personal and racial animus that at least some of Ms. Paneto's supervisors seemed to have

towards her. Viewing the evidence in the light most favorable to Ms. Paneto, a reasonable factfinder could find that CWork's justifications for her termination are unworthy of credence. CWork is therefore not entitled to summary judgment on Ms. Paneto's race discrimination claims.

C. **CWork is entitled to summary judgment on Ms. Paneto's disparate treatment gender discrimination claims based on hostile work environment, but not her disparate treatment race discrimination claims based on hostile work environment.**

CWork is entitled to summary judgment on Ms. Paneto's hostile work environment claims based on gender discrimination, but not those based on race discrimination.[6] A hostile work environment violates Title VII only if it is so severe

---

[6] Ms. Paneto's opposition brief argues that her hostile work environment claims should proceed to trial because CWork did not request summary judgment on those claims. CWork argues in reply that Ms. Paneto did not adequately plead hostile work environment. Neither argument is persuasive. While CWork's moving brief did not address the specific standard for hostile work environment, it did argue that the underlying disparate treatment discrimination claims should be dismissed, and after it was apparently alerted to the fact that Ms. Paneto was proceeding under a hostile work environment theory, it argued on reply that her claims should not proceed to trial. CWork therefore properly moved for summary judgment on the hostile work environment claims. The court also finds Ms. Paneto's hostile work environment claims were adequately pleaded, at least with respect to those based on race discrimination. Count II asserts disparate treatment discrimination claims under Title VII and the PHRA, and as the parties agree, hostile work environment provides a theory of recovery for those claims. (Doc. 1, ¶ 72.) The complaint alleges that Caucasian CWork supervisors disparaged Ms. Paneto and other minority employees (*see id*. ¶¶ 64, 66); that Ms. Paneto's Caucasian supervisor "slapped her in the face in full view of other employees" (*id*. ¶ 65); that various policies were uniformly enforced against non-Caucasian workers but not against Caucasian workers (*id*. ¶¶ 55–63); and that this treatment had a physical and emotional detrimental effect on her (*id*. p. 68). These facts are sufficient to state a plausible claim for hostile work environment based on race discrimination. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The court will therefore address whether CWork is entitled to summary judgment on Ms. Paneto's hostile work environment claims.

and pervasive that it "alters the conditions of the victim's employment" and creates an "abusive working environment." *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) (quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270 (2001). Hostility is assessed both objectively and subjectively. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). In assessing hostility, the court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

To establish a prima facie hostile work environment claim, the plaintiff must show (1) intentional discrimination based on sex [or race]; (2) severe or pervasive conduct; (3) a detrimental effect on the plaintiff; (4) a detrimental effect on a reasonable person in similar circumstances; and (5) the existence of *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013); *see Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998) (clarifying the same framework applies to race and sex discrimination). Offhand comments and isolated incidents are typically insufficient to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). At the same time, even infrequent discriminatory acts may rise to the level of a hostile work environment

where they are particularly extreme. *See Castleberry*, 863 F.3d at 265 (discussing decisions from several other circuits that have found that even a single use of a racial epithet can create a hostile environment).

With respect to race discrimination, Ms. Paneto has established the first two elements of a prima facie hostile work environment claim by showing that she was subjected to discrimination based on race and that the conduct was severe and pervasive. Ms. Paneto testified that her Caucasian supervisors called her a "monkey" and "colored," that her Caucasian supervisor slapped her in front of others, that her Caucasian colleague called her a "nigger" in front of others, and that all of her complaints about those incidents were ignored. She testified that her supervisors called other non-Caucasian employees names, belittled them, and enforced company policies in a discriminatory manner. Considering the totality of the circumstances and viewing the evidence in the light most favorable to Ms. Paneto, a reasonable jury could find that these circumstances created a hostile workplace.

Ms. Paneto has also met the second and third elements of a prima facie hostile work environment claim by showing that that the incidents reasonably had a detrimental effect on her. Not only did Ms. Paneto's supervisors and colleagues call her racially-offensive names and assault her, but they did so publicly and without consequence, and the treatment became so severe that Ms. Paneto unsuccessfully requested to transfer to another department. Ms. Paneto also testified that CWork

denied her and other employees of color certain privileges that were afforded to Caucasian employees, including those related to dress code, building visitors, and break times. This evidence permits a reasonable inference that Ms. Paneto was detrimentally affected by her treatment, and that a reasonable person in Ms. Paneto's shoes would also have been detrimentally affected.

Finally, Ms. Paneto has met the fourth element for a hostile work environment by adducing evidence of *respondeat superior* liability. In order to show *respondeat superior* liability, the plaintiff must "demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate action." *Weston v. Pennsylvania.*, 251 F.3d 420, 427 (3d Cir. 2001). An employer's response is adequate if "the action was reasonably calculated to prevent further harassment." *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir.1997). Ms. Paneto has put forward evidence that she was subject to discriminatory conduct by multiple supervisors during the course of their supervisory duties, that her supervisor ignored her complaints about being called a racial slur by a co-worker, and that CWork's upper-management and human resources department personnel failed to investigate her complaints and request for transfer. This evidence is sufficient to support that CWork failed to provide a reasonable avenue for complaint and that, despite being aware of alleged harassment, it failed to take appropriate action. CWork is therefore not entitled to

summary judgment on Ms. Paneto's disparate treatment race discrimination claims based on hostile work environment.

Ms. Paneto's hostile work environment claims based on gender are another story. The court has searched the record and found no evidence from which a reasonable jury could find that Ms. Paneto was subjected to severe and pervasive conduct based on her gender that reasonably detrimentally affected her. The evidence that does exist with respect to gender discrimination is limited to isolated remarks involving the word "bitch" and advancing a stereotype that women should not work. While such conduct is never to be condoned, it was not severe and pervasive and no rational factfinder could find that it reasonably detrimentally impacted Ms. Paneto. CWork is therefore entitled to summary judgment on Ms. Paneto's disparate treatment gender discrimination claims based on hostile work environment.

**D. <u>CWork is not entitled to summary judgment on Ms. Paneto's retaliation claims.</u>**

CWork's motion also argues that it is entitled to summary judgment on Ms. Paneto's retaliation claims. Title VII prohibits employers from discriminating against employees who "opposed any practice made an unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). The PHRA and FMLA have similar

provisions prohibiting retaliation against employees for exercising the rights those laws guarantee.[7] 43 PA. STAT. ANN. § 955; 29 U.S.C. § 2615(a).

Where, as here, a plaintiff's claim is based on indirect evidence of retaliation, the *McDonell Douglas* framework applies. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Lichtenstein*, 691 F.3d at 302. To establish a prima facie claim of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) the employer took adverse employment action against her; and (3) there exists a causal connection between her protected activity and the adverse employment action. *Moore v. City of Phila.,* 461 F.3d 331, 340–41 (3d Cir. 2006). If the employer produces a legitimate, non-retaliatory reason for the adverse action, the burden shifts back to the plaintiff to ultimately prove the asserted reason was pretext. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). As discussed more fully above, to show pretext, the plaintiff  must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's

[7] The court will analyze the three claims together given that FMLA retaliation claims apply the same burden-shifting framework as those asserted under Title VII and the PHRA, and since CWork does not dispute that Ms. Paneto has established prima facie retaliation claims. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 302 (3d Cir. 2012).

action." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes,* 32 F.3d at 764–65).

CWork's motion does not contest that Ms. Paneto has established prima facie retaliation claims with respect to these incidents. Rather, CWork argues that it is entitled to summary judgment because it had legitimate and non-discriminatory reasons for its actions, and because Ms. Paneto cannot show those reasons are pretext. Specifically, CWork argues that it had a legitimate reason for issuing Ms. Paneto a written warning on September 30, 2016 given her disruptive behavior singing, dancing, and falling onto to the floor at work on August 26, 2016. Ms. Paneto concedes that this is a legitimate basis for the warning, but she claims that the reason is pretext. Ms. Paneto points out that she already had received a verbal warning for her conduct on September 2, 2016, and that no subsequent investigation occurred that could justify a second warning, for the same conduct, more than one month later. In addition, the initial investigation that did occur was one-sided and highly questionable, involving a supervisor with a known dislike for Ms. Paneto and a history of calling her discriminatory names gathering employees in a single room to air their grievances about her. Even further, Ms. Paneto points out that the timing of the warning is suspicious since she had been approved for FMLA just four days earlier, especially given CWork's prior refusal to help her with the FMLA application, as well as the threat Ms. Bame made when she issued the warning that

Ms. Paneto would be terminated if it ever appeared that she was misusing FMLA time. The court agrees that, presented with this evidence, as well as CWork's history of turning a blind to eye to conduct much more serious than singing and dancing and falling to the floor, a reasonable jury could find CWork's proffered reason for the warning unworthy of belief. Summary judgement on this claim therefore not appropriate.

Next, CWork contends that it issued Ms. Paneto the October 2016 record of conversation because she displayed unprofessional behavior in the September 30 meeting, citing testimony by Ms. Bame and the other participant that Ms. Paneto yelled and interrupted and abruptly left the meeting on several occasions. That testimony is disputed, however, as Ms. Paneto testified at her deposition that she never yelled at or interrupted anyone, and that she explained she had to excuse herself from the meeting because her hemi-facial spasms began activating. A reasonable factfinder could accept Ms. Paneto's version of the events—especially over that of Ms. Bame, considering the evidence outlined above—which would demonstrate pretext as a matter of law. As such, CWork is not entitled to summary judgment on this claim.

Next, CWork asserts that Ms. Paneto received an unfavorable 2016 end-of-year evaluation because she incurred two disciplinary actions, exhibited less professional behavior, and was held to a higher standard because she was training

for a team leader position. Here too, Ms. Paneto has put forth sufficient evidence of pretext to survive summary judgment. The review was issued in large part by Ms. Bame, after Ms. Paneto reported her for poor treatment and physical assault, and after Ms. Paneto unsuccessfully sought a transfer to another department. (Doc. 34, ¶ 31.) Ms. Paneto also testified that her work behavior did not change from previous years when she received positive reviews, which appear to have been more forgiving than her 2016 review, particularly with respect to interpersonal relationship and attendance issues. Further, CWork's claim that Ms. Paneto was held to a higher standard than years past because she was training to become a team leader is questionable given that she was also training for the position the previous year. (Doc. 34, ¶¶ 30, 31, 33.) Considering these circumstances, a rational factfinder could find that CWork's proffered reasons for Ms. Paneto's poor evaluation are pretext, and summary judgment is thus inappropriate.

Finally, CWork asserts that it terminated Ms. Paneto for the legitimate reason that she bullied co-workers and called one colleague a "nasty ass hoe" and "fat ass." The court agrees this is a legitimate and non-discriminatory reason to terminate an employee. Once again though, Ms. Paneto has raised an issue of fact as to whether it's pretext. The record contains evidence that Ms. Paneto never said at least some of the remarks. Ms. Paneto has maintained since the beginning that she was not even at work the day the "fat ass" comments were made, and her colleague, Ms. Hansley,

testified under oath that she was one that made them. More importantly, the record also contains evidence that Ms. Paneto informed human resources that she was absent that day, and that Ms. Hansley informed human resources that she was the one responsible for the statements, but she was never disciplined. Ms. Paneto also raises other justifiable concerns regarding the authenticity of CWork's investigation into her statements, such as its decision to interview certain employees who were not present when the alleged statements were made, as well as its failure to interview certain eyewitnesses that were actually present. This evidence suggests that CWork may have known that Ms. Paneto was not responsible for the comments, or that it at least buried its head to that fact, and it therefore raises an issue of fact about whether CWork's asserted reasons for terminating Ms. Paneto are pretext. This is particularly true when viewing the evidence in the light most favorable to Ms. Paneto and considering it in the context of CWork's failure to investigate Ms. Paneto's own, more serious complaints against several co-workers, including her complaints about being physically assaulted by her supervisor and being called awful racial slurs. From this record, a reasonable factfinder could rationally find that CWork's investigation into Ms. Paneto's conduct is unworthy of credence and that reasons for her termination decision are pretext. The court will therefore deny CWork summary judgment on Ms. Paneto's retaliation claims.

**E.** **The after-acquired evidence doctrine limits Ms. Paneto's damages.**

CWork's motion argues that it is entitled to summary judgment on its affirmative defense of after-acquired evidence. The after-acquired evidence doctrine applies in certain circumstances to limit the amount of damages available to a plaintiff. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359-60, 362-63 (1995). For the doctrine to apply, the defendant must establish (1) that the employee committed misconduct, and (2) that the misconduct so was so severe that, had the employer known about it at time of actual discharge, it would have in fact terminated the employee for that reason alone. *Id.* at 363; *Bullock v. Balis & Co.*, No. 99-CV-748, 2000 WL 1858719, *9 (E.D. Pa. 2000). If a defendant proves that the doctrine applies, reinstatement and front pay become inappropriate, and absent extraordinary circumstances, backpay is limited to the period of time between the unlawful discharge and the date the new information was discovered. *Id.* (citing *McKennon*, 513 U.S. at 362–63).

Here, CWork satisfies the first element of the after-acquired evidence doctrine because there is no dispute that it discovered, on March 13, 2019, that Ms. Paneto falsely stated on her resume that she used when applying to the company that she possessed a high school diploma from Williamsport Area High School, when in fact she never graduated from high school. The after-acquired evidence doctrine applies to resume fraud. *Bullock*, 2000 WL 1858719 at *9. Further, CWork satisfies the

doctrine's second element because it has demonstrated that it would have terminated Ms. Paneto upon discovering the misrepresentations. CWork submits a declaration by its Director of Human Resources stating that the company would have terminated Ms. Paneto had it known that she lied on her resume, and that doing so violates its code of conduct. (Doc. 21, ¶ 10; Doc. 21-1, p. 4.)  Though Ms. Paneto contends that CWork should now be required to produce the code of conduct and demonstrate that she violated specific provisions, such a showing is far from necessary under the circumstances. Common sense provides that the vast majority of employers would consider lying on a resume to get hired a terminable offense, and the declaration from CWork confirms it is no exception. The after-acquired evidence doctrine therefore applies to preclude Ms. Paneto from recovering backpay for any dates after March 13, 2019, the date CWork discovered her misconduct.

## IV.   CONCLUSION

For the reasons stated above, the court will grant CWork's motion in part and deny it in part. An appropriate order shall follow.

Dated: November 30, 2020

/s/ Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge